BGK:LDM
F#2025V02153

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA,

               Plaintiff,

        -against-

APPROXIMATELY $1,343,254.03
FORMERLY ON DEPOSIT IN BANK OF
AMERICA ACCOUNT NUMBER
483105318997 HELD IN THE NAME OF CU
NOVA INC., AND ALL PROCEEDS
TRACEABLE THERETO,

               Defendant *in rem*.
– – – – – – – – – – – – – – – – – – – – X

**VERIFIED COMPLAINT IN REM**

Civil Action No.

Plaintiff, United States of America, by its attorney, Joseph Nocella, Jr., United States

Attorney for the Eastern District of New York, alleges upon information and belief as follows:

NATURE OF THE ACTION

1.     This is a civil action *in rem* to forfeit and condemn to the use and benefit of the

United States the above-captioned defendant property and all proceeds traceable thereto

(collectively, the "Defendant Funds").

2.     As set forth herein, the Defendant Funds are subject to forfeiture pursuant to:

(a) 18 U.S.C. § 981(a)(1)(C), as property that constitutes or is derived from proceeds traceable to

wire fraud, in violation of 18 U.S.C. § 1343, or a conspiracy to commit such offense, in violation

of 18 U.S.C. § 1349; and/or (b) 18 U.S.C. § 981(a)(1)(A), as property involved in a violation of

18 U.S.C. §§ 1956 and/or 1957, or property traceable to such property.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1355.

4.      Venue lies in the Eastern District of New York, pursuant to 28 U.S.C. §§ 1355 and 1395, in that the acts and omissions giving rise to the forfeiture occurred in the Eastern District of New York.

## THE DEFENDANT FUNDS

5.      The Defendant Funds consist of approximately $1,343,254.03 formerly on deposit in Bank of America account number 483105318997 (the "Subject Account"), held in the name of CU Nova Inc., and all proceeds traceable thereto.

## STATUTORY BACKGROUND

A.      Statutes Relating to the Underlying Offenses

6.      Title 18, United States Code, Section 1343, makes it a crime to transmit or cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing a scheme or artifice to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises.  Title 18, United States Code, Section 1349 prohibits conspiring to commit a violation of Section 1343.

7.      Title 18, United States Code, Section 1956(a)(1)(B)(i), prohibits, among other things, any person, knowing that property involved in a financial transaction represents the proceeds of some form of unlawful activity, from conducting or attempting to conduct such a financial transaction which in fact involves the proceeds of "specified unlawful activity," knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of "specified unlawful

2

activity." Title 18, United States Code, Section 1956(h), prohibits conspiring to commit any offense defined in Section 1956.

8.      Title 18, United States Code, Section 1957, prohibits, among other things, any person from knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 that is derived from "specified unlawful activity." Title 18, United States Code, Section 1956(h), prohibits conspiring to commit any offense defined in Section 1957.

9.      Pursuant to Title 18, United States Code, Section 1961(1)(B), as incorporated by Title 18, United States Code, Section 1956(c)(7)(A), the term "specified unlawful activity" includes violations of Title 18, United States Code, Section 1343 (wire fraud).

B.      Forfeiture Statutes

10.      Pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," as defined in Title 18, United States Code, Section 1956(c)(7), including wire fraud, or a conspiracy to commit such offense, is subject to forfeiture to the United States.

11.      Pursuant to Title 18, United States Code, Section 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Sections 1956 and/or 1957, or any property traceable to such property, is subject to forfeiture to the United States.

FACTUAL BACKGROUND

A.      Relevant Entity and Individual

12.      At all times relevant to the Verified Complaint *in rem*, CU Nova Inc. ("CU Nova") was a business incorporated in New York.

3

13. At all times relevant to the Verified Complaint *in rem*, Subject No. 1 ( "Subject No. 1") was the registered agent, sole owner, and president of CU Nova. The business address for CU Nova was the same as Subject No. 1's residential address in Brookyln, New York.

14. The Subject Account, which was opened in or around May 2024, was a business checking account held in the name of CU Nova.

B.    Background to the Scheme

15. A business email compromise ("BEC") scheme is a type of fraud that targets businesses, where criminals send an email message that appears to come from a trusted source making a legitimate request to a business. The email is intended to trick the business into sending funds to financial accounts under the criminals' control instead of the intended recipient. The perpetrators of BEC schemes are typically able to cause funds to be transferred without the victims' knowledge and before the victims or the financial institutions involved detect the fraud.

C.    The BEC Scheme Involving the Subject Account

14. On or about June 12, 2024, a Spanish holding company for entities in the energy sector (the "Holding Company") sent an email notifying its shareholders of an upcoming payment of dividends. The Holding Company's email requested shareholders to identify an account where their dividend payment should be sent.

15. In response to the Holding Company's June 12, 2024 message, a Chile-based financial investments firm (the "Financial Firm") that held shares in the Holding Company responded to the message via email to confirm its account information for receipt of the expected dividend payment in the amount of approximately $2,567,192.17. The account information provided by the Financial Firm was consistent with that used to receive prior dividends.

16. On or about June 13, 2024, the Holding Company received an email that purported to have been sent by the Financial Firm instructing the Holding Company to wire the

4

Financial Firm's dividend payment to the Subject Account. Attached to this email was a document purportedly signed by the Financial Firm's Chief Financial Officer that provided the account information for the Subject Account.

17.     The Holding Company, believing the email and attachment were sent by the Financial Firm, complied with the instructions and wired the dividend payment to the Subject Account. Specifically, on or about June 16, 2024, approximately $2,567,192.17 (the "Dividend Payment") was wired to the Subject Account. The wire posted to the Subject Account on or about June 17, 2024.

18.     In or around July 2024, the Holding Company's bank notified the Holding Company of suspicious activity in the Subject Account. Thereafter, the Holding Company contacted the Financial Firm to confirm whether it had received the Dividend Payment. On or about July 12, 2024, the Financial Firm confirmed that it had not received the Dividend Payment. After both the Financial Firm and the Holding Company conducted an investigation, the Financial Firm discovered its email system had been hacked.

19.     In or around August 2024, the Holding Company reported the incident to the Spanish National Police.

20.     Further investigation revealed that, on or about June 18, 2024—after the Subject Account received the Dividend Payment—approximately $1,223,249.00 had been withdrawn from the Subject Account through various transactions. These transactions included: (i) a cashier's check in the amount of $200,030.00 drawn on the Subject Account; (ii) a $9,000.00 cash withdrawal; (iii) a wire transfer in the approximate amount of $248,744.00 sent to a Bank of China account held in the name of Weifang Hongshan Textiles; (iv) a wire transfer in the approximate amount of $388,000.00 sent to a Bank of China account held in the name of

Weifang Hongshan Textiles; and (v) a wire transfer in the approximate amount $377,475.00 sent to a Bank of China account held in the name of Changxing Ruihao Textlie.  Both Weifang Hongshan Textiles and Changxing Ruihao Textlie are associated with other BEC schemes.

21.    On or about July 23, 2024, the Subject Account, which still held $1,343,254.03 remaining from the Dividend Payment (*i.e.*, the Defendant Funds), was closed by the bank due to the suspicious nature of the activity in the account. Presently, the Defendant Funds are being held by the bank.

D.    Interview of Subject No. 1

22.    On or about August 8, 2024, agents of the United States Secret Service interviewed Subject No. 1 about the Subject Account.  Subject No. 1 admitted to the agents that, in or around May 2024, Subject No. 1, who was unemployed, was approached by an unknown man in Brooklyn, New York who offered to pay Subject No. 1 to open a bank account.  Subject No. 1 was supplied with IRS and New York Department of State documents for CU Nova to use to open the account in the name CU Nova Inc.

23.    According to Subject No. 1, on or about May 23, 2024, he was instructed by the unknown man to open the Subject Account using the documentation provided.  Thereafter, Subject No. 1 was directed by the unknown man to conduct various bank transactions from the Subject Account, including the withdrawal of funds as cash, cashier checks, and/or wire transfers to specified accounts.  After completing the bank transactions, Subject No. 1 delivered any cash withdrawn or cashier's checks issued to the unknown man.

24.    After the interview and in the presence of his legal counsel, Subject No. 1 provided written consent to forfeit and abandon the Defendant Funds to the United States.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Proceeds Traceable to Wire Fraud)

25.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 as if fully set forth herein.

26.     The Defendant Funds represent property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," which is defined in 18 U.S.C. § 1956(c)(7) to include, among other things, wire fraud, or a conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349.

27.     As a result, the Defendant Funds are liable to condemnation and forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C).

### SECOND CLAIM FOR RELIEF
(Property Involved in Money Laundering)

28.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 as if fully set forth herein.

29.     The Defendant Funds represent property, real or personal, that is involved in or traceable to property involved in a transaction or attempted transaction: (a) designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of "specified unlawful activity;" and/or (b) knowing the property is criminally derived of a value greater than $10,000 and is derived from "specified unlawful activity," in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h), and/or 1957.

30.     As a result, the Defendant Funds are liable to condemnation and forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A).

## **CONCLUSION**

WHEREFORE, plaintiff United States requests that: a Warrant for Arrest of Articles *in rem* be issued by the Court for the arrest of the Defendant Funds; that due notice of these proceedings be given to all interested persons to appear and show cause why forfeiture should not be decreed; that this Court decree that the Defendant Funds be forfeited and condemned to the use of the United States for disposition in accordance with law; that the Plaintiff be awarded its costs and disbursements in this action; and for such other and further relief as the Court may deem just and proper.

Dated:  Brooklyn, NY
       June 9, 2026

                        JOSEPH NOCELLA, JR.
                        United States Attorney
                        Eastern District of New York

By:  *Laura D. Mantell*
                        Laura D. Mantell
                        Assistant United States Attorney
                        (718) 254-6253

8

**VERIFICATION**

Daniel Alessandrino, hereby declares as follows:

1.      I am a Task Force Officer with the United States Secret Service.

2.      I have read the within Verified Complaint *in rem* and know the contents thereof.

3.      I believe the matters contained in the within Verified Complaint *in rem* are true and accurate to the best of my knowledge, information and belief.

4.      The source of my information and the grounds for my belief are personal knowledge and information provided by other law enforcement officers and the official files and records of the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:   New York, NY
          June 9___, 2026


_____
Daniel Alessandrino
Task Force Officer
United States Secret Service